Katherine E. STINE, Petitioner,

v.

**UNEMPLOYMENT COMPENSATION
BOARD OF REVIEW,**
Respondent.

Commonwealth Court of Pennsylvania.

Argued Sept. 8, 2003.

Decided Oct. 16, 2003.

Katherine E. Stine, Altoona, for petitioner.

Judith M. Gilroy, Harrisburg, for respondent.

BEFORE: COLINS, President Judge, McGINLEY, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Senior Judge McCLOSKEY.

Katherine E. Stine (Petitioner) petitions for review of an order of the Unemployment Compensation Board of Review (Board), dated September 26, 2002, affirming the decision of an Unemployment Compensation Referee (the Referee), thereby denying Temporary Extended Unemployment Compensation (TEUC) benefits to Petitioner. We now reverse.

Petitioner is an attorney who was laid off from her employment on September 30, 2000. On October 1, 2000, she filed an application for unemployment compensation (UC) benefits, which was ultimately approved. Petitioner exhausted those benefits in April of 2001. During the period from September 20, 2000, through December 31, 2001, Petitioner held several part-time positions as an attorney and as an instructor at Penn State Mont Alto.

On or about January 6, 2002, Petitioner filed a claim for UC benefits based on the wages she had earned from September 20, 2000 through December 31, 2001. On Jan-

uary 16, 2002, Petitioner was found to be financially eligible for UC benefits at a weekly benefit rate of $113.00.

On February 6, 2002, Petitioner elected to participate in the Self Employment Assistance Program (SEA Program).[1] In connection with that election, Petitioner executed a document entitled "The Self Employment Assistance Program (SEA) Participation Agreement" (the SEA Agreement). According to the language of the SEA Agreement, Petitioner's execution of the document represented her "official acceptance into the SEA Program." The SEA Agreement required Petitioner, in part, to participate in self-employment activities, report her income from self-employment activities or other employment, and devote her full-time activities to starting her own business. Income from Petitioner's self-employment activities was not deductible from her SEA allowance, although income from other employment could be deductible. Under the terms of the SEA Agreement, Petitioner did not have to accept an offer of suitable employment.[2] On the same date that Petitioner executed the SEA Agreement, she signed a certification that she was provided cer-

---

1. As a general rule, individuals engaged in self-employment activities are excluded from receiving unemployment compensation. *See* Section 402(h) of the Unemployment Compensation Law, Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, 43 P.S. § 802(h). However, in 1997, following the passage of similar legislation by the federal government, the Commonwealth of Pennsylvania enacted the Self–Employment Assistance Program Act (the SEA Act), which allows participating individuals to receive an allowance while engaging in self-employment activities. The Self–Employment Assistance Program Act, Act of November 26, 1997, P.L. 504, as amended, 43 P.S. §§ 920.1–920.12.

2. The SEA Agreement contained the following paragraphs:

I will submit a SEA Program Withdrawal Form at any time I believe that I must withdraw from the SEA Program, or if terminated because of non-compliance with the SEA Program requirements or activities. If I withdraw from the SEA Program I will once again become eligible to collect my remaining amount of UC benefits and will be required to once again maintain all requirements for UC eligibility and any activity in self-employment would than [sic] result in loss of benefits.

I can only participate in the SEA Program one time. If I withdraw, or am terminated from the SEA Program, I will not be eligible to participate for the remainder of the program year.

tain information about the SEA Program and its requirements.

Petitioner exhausted her SEA allowance the week ending July 13, 2002. On July 16, 2002, Petitioner received notification that she was financially eligible for TEUC benefits. The notice stated "[t]his certifies that you are ineligible for regular UC benefits at this time." Thereafter, Petitioner filed a claim for TEUC benefits.

By notice of determination dated August 22, 2002, the Unemployment Compensation Service Center denied Petitioner's claim for TEUC benefits.[3] Petitioner appealed the notice of determination. A hearing was conducted on September 24, 2002, before the Referee. By decision dated September 26, 2002, the Referee affirmed the notice of determination. Petitioner then timely appealed the Referee's decision. By order dated November 15, 2002, the Board affirmed the decision of the Referee.[4]

 On appeal,[5] Petitioner argues that the Board erred when it affirmed the determination that she had failed to exhaust her UC benefits and was, therefore, ineligible for TEUC benefits. Respondent argues that because the SEA allowance was paid "in lieu of" unemployment compensation benefits, Petitioner has not exhausted

her regular unemployment compensation benefits. Petitioner also argues that she was not a "dislocated worker" under the SEA Program and, therefore, she was not prohibited from receiving TEUC benefits under the terms of the SEA Agreement. To the contrary, Respondent contends that Petitioner is a "dislocated worker" such that she is not entitled to TEUC benefits pursuant to the SEA Agreement.

With regard to Petitioner's first argument, Petitioner seeks benefits under the Temporary Extended Unemployment Compensation Act of 2002 (the TEUC Act of 2002).[6] The TEUC Act of 2002 permits a State to enter into and participate in an agreement with the Secretary of Labor whereby the State will make payment of TEUC benefits to eligible individuals.[7] Under the TEUC Act of 2002, TEUC benefits are payable to individuals who have exhausted all rights to regular compensation under State law or under Federal law with respect to a benefit year (excluding any benefit year ending prior to March 15, 2001) and have no rights to regular compensation or extended compensation with respect to a week under any State or Federal unemployment compensation or other law.[8] *See* Section 202(b)(1) and (2) of the TEUC Act of 2002.

---

3. The Unemployment Compensation Service Center found that Petitioner had not exhausted all her regular UC benefits; that the benefit year corresponding to her claim for regular UC benefits ended on or before March 10, 2001; that she received the maximum amount of TEUC benefits payable to her; and that she elected to receive SEA allowance in lieu of regular UC benefits. For those reasons, it determined that she was not entitled to TEUC benefits.

4. The Board stated only that the decision was "proper under the Unemployment Compensation Law and in accordance with the precedent rulings established and the interpretation thereof."

5. This Court's scope of review in unemployment compensation cases is limited to determining whether constitutional rights were violated, whether errors of law were committed or whether findings of fact were supported by substantial evidence. *Kelly v. Unemployment Compensation Board of Review*, 776 A.2d 331 (Pa.Cmwlth.2001).

6. The Temporary Extended Unemployment Compensation Act of 2002, Title II, Pub.L. 107–147, 116 Stat. 26 (2002).

7. *See* Section 202(a) and (b) of the TEUC Act.

8. Additionally, in order for an individual to be eligible for TEUC benefits, the individual may not be receiving compensation with respect to

Section 202(c) of the TEUC Act of 2002 defines "exhaustion of benefits" as follows:

For purposes of subsection (b)(1), an individual shall be deemed to have exhausted such individual's rights to regular compensation under a State law when

(1) no payments of regular compensation can be made under such law because such individual has received all regular compensation available to such individual based on employment or wages during such individual's base period; or

(2) such individual's rights to such compensation have been terminated by reason of the expiration of the benefit year with respect to which such rights existed.

With regard to the SEA Program in which Petitioner participated, federal and State law provides that an individual who meets certain requirements is eligible to participate in an SEA Program and to receive an allowance in lieu of regular UC benefits under the State law for the purpose of assisting such individuals in establishing a business and becoming self-employed. *See* 26 U.S.C. § 3306(t)(1), and Section 2 of the SEA Act, 43 P.S. § 920.2. The SEA allowance is "payable in the same amount, at the same interval, on the same terms, and subject to the same conditions, as regular" UC benefits. 26 U.S.C. § 3306(t)(2), and Section 5(a) of the SEA Act, 43 P.S. § 920.5(a). An individual participating in the SEA Program is not subject to requirements relating to availability for work, active search for work, and refusal to accept work, and, in addition, State requirements relating to disqualifying income are not applicable to income earned from self-employment by

such individuals. 26 U.S.C. § 3306(t)(2)(A) and (B), Section 5(a)(1) and (2) of the SEA Act, 43 P.S. § 920.(5)(a)(1) and (2). In addition, the sum of the allowances paid under the SEA Act and regular UC benefits paid with respect to any benefit year cannot exceed the maximum amount payable for the benefit year. Section 4 of the SEA Act, 43 P.S. § 920.4.

The federal law specifically provides that individuals receiving SEA allowances "are considered to be unemployed for the purposes of Federal and State laws applicable to unemployment compensation." 26 U.S.C. § 3306(C). Similarly, the SEA Act specifically provides that "except where inconsistent with this act, all terms and conditions of Federal law and the Unemployment Compensation Law applicable to regular benefits shall be applicable to self-employment assistance allowances under this act." Section 9 of the SEA Act, 43 P.S. § 920.9.

■ Under the statutory law, SEA benefits are to be treated in a manner similar to UC benefits. Nothing in the statutes specifically prohibits an individual from receiving TEUC benefits after completing an SEA Program. According to the SEA Agreement, an individual who terminates participation in the SEA Program, even after substantial completion, would be eligible for "remaining" UC benefits. In those termination situations, the weeks during which the individual participated in the SEA Program and received an allowance are considered equivalent to weeks during which an individual received UC benefits for purposes of determining the number of weeks of eligibility for remaining UC benefits. Hence, it is only reasonable to conclude that for purposes of deter-

such week under the unemployment compensation law of Canada and must have filed an initial claim for compensation on or after

March 15, 2001. *See* Section 202(b)(3) and (4) of the TEUC Act of 2002.

mining exhaustion of UC benefits, weeks during which an individual received UC benefits or an allowance under the SEA Program are also considered to be equivalent. Therefore, one must consider the total number of weeks during which the individual received either UC benefits or the allowance under the SEA Program. Otherwise, an individual would be penalized for completing the SEA Program. Applying such an analysis to the facts at hand, we conclude that Petitioner exhausted her UC benefits for purposes of determining eligibility for TEUC benefits.[9]

Petitioner next argues that she is not a "dislocated worker" and, therefore, she is not prohibited by the terms of the SEA Agreement from receiving TEUC benefits. Based upon the SEA Handbook that Petitioner received, Respondent argues that Petitioner is a "dislocated worker," and as such, is not entitled to TEUC benefits.

Neither the TEUC Act of 2002 nor the SEA Act define or even refer to the term "dislocated worker." However, the SEA Agreement that Petitioner signed contained the following language: "If I am a Dislocated Worker participating in the SEA Program, I will not be eligible for any extended or emergency unemployment (UC) benefits, should they become available." [10] The SEA Agreement also does not define the term "dislocated worker," and it fails to in any way identify those individuals who are to be considered "dislocated workers" for purposes of TEUC benefits.

While the SEA Handbook makes reference to the term "dislocated worker," its language is vague and ambiguous. The SEA Handbook provides, in one section, as follows:

The general guidelines for eligibility consideration for SEA Intensive services include 1) Eligibility for WIA [11] services

However, if the individual has been terminated from or voluntarily left the SEA program, and if otherwise eligible, the individual may be paid TEUC since the individual is an exhaustee for TEUC qualifying purposes.

We disagree that the UIPL even addresses the issue presented in this case, as it relates to individuals "participating" in the SEA Program, not individuals who previously participated in the SEA Program. Of course individuals who are participating in the SEA Program are prohibited from simultaneously receiving an SEA allowance (in lieu of UC benefits) and TEUC benefits. However, such a prohibition does not automatically extend to those who previously participated in the SEA Program.

---

**9.** Respondent relies upon Unemployment Insurance Program Letter No. 18–02 (UIPL), issued by the United States Department of Labor on March 19, 2002. That letter included an attachment, entitled "Questions and Answers for Clarification of Title II of Public Law 107–147," that answered questions concerning the TEUC program.[9] Question and answer number 14 read:

 *14. Self–Employment Assistance*
 a. Question: May TEUC be paid to individuals participating in a self-employment assistance (SEA) program?
 Answer: No. SEA is payable to individuals "in lieu of" regular UC (Section 3306(t)(1) of the Federal Unemployment Tax Act), which means they have not, in effect, exhausted regular compensation. As explained in UIPL 14–94,
 Individuals who have exhausted regular UC are ineligible for SEA allowances. Individuals may not receive SEA allowances in lieu of Federal–State extended benefits (EB), additional benefits (AB) entirely financed by the state, any wholly funded Federal extension of UC, or other types of compensation not meeting the definition of regular UC.

**10.** The sentence from the SEA Handbook states *"[i]f I am a dislocated worker,"* which suggests that not all participants in the SEA Program are dislocated workers.

**11.** "WIA" stands for "Workforce Investment Act," 29 U.S.C. § 2801–2945 (2003).

which is income based 2) Workforce status as a dislocated worker who is receiving Unemployment Compensation Insurance Benefit recipients [sic] or has been profiled for reemployment services.

In addition, the SEA Handbook provides a chart which sets forth "a recap of the eligibility requirements and the customer classifications affiliated" with the SEA Program. The chart identifies three "customer classifications" as Workforce Investment Act, Dislocated Worker, and Unemployment Compensation "Profiled" Claim Recipient. "Dislocated Worker" is defined as a person "18 years of age or older and recently lost their job through no fault of their own and has received notice of termination from the company." "Unemployment Compensation Profiled Claim Recipient" is defined as "18 years of age, unemployed and be determined eligible for SEA services. Must file for unemployment Compensation (UC), be financially eligible and meet all other UC criteria. Must have received at least 1 but no more than 10 weeks of benefits on current claim of benefits." No other discussion is included regarding the term "dislocated worker." No where does the SEA Handbook address eligibility for TEUC benefits.

Based on the above, Petitioner contends that there are three distinct customer classifications, and that she is in the classification related to "profiled" recipients. Respondent does not dispute that Petitioner was "profiled." Rather, Respondent argues that the SEA Program creates two types of dislocated workers, and that the profiled recipient classification is just one type of dislocated worker. Notwithstanding that argument, Respondent contends

that Petitioner also meets the definition of dislocated worker as set forth in the chart.

■ Based upon our review of the relevant language of the SEA Handbook, we conclude that it is vague and ambiguous. By no means is the language clear as to whether an individual who has been profiled is considered to be a dislocated worker.[12] Given that the relevant statutory law provides no guidance for determining the meaning of "dislocated worker," nor does the statutory law cited above even provide that "dislocated workers" would be ineligible for TEUC benefits, and given that the SEA Agreement does not sufficiently identify those individuals who are to be considered "dislocated workers" for purposes of ineligibility for TEUC benefits, we cannot conclude that Petitioner was a dislocated worker such that she is ineligible for TEUC benefits.

Accordingly, for the reasons set forth above, we reverse the order of the Board.

### *ORDER*

AND NOW, this 16th, day of October, 2003, the order of the Unemployment Compensation Board of Review, dated September 26, 2002, is reversed.

---

12. The interpretations of the language of the SEA Handbook offered by Petitioner and Respondent are both plausible. It is certainly not clear from the language how the eligible participants are to be classified, and, without explanation, it appears that some classifications may be overlapping.